UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LE-VEL BRANDS, LLC § | |
| § | |
| v. § | CIVIL NO. 4:20-CV-420-SDJ |
| § | |
| R&D GLOBAL, LLC d/b/a § | |
| LURRALIFE, ET AL. § | |

### MEMORANDUM OPINION AND ORDER

On April 15, 2020, Le-Vel Brands, LLC ("Le-Vel") filed suit against, among others, R&D Global, LLC ("R&D Global") and its founders, Dan and Richard Putnam in state court in Dallas County, Texas, for claims arising out of the Putnams' alleged efforts to use Le-Vel's confidential and proprietary information to form a competing company. The defendants in that suit removed the case to the Dallas Division of the United States District Court for the Northern District of Texas, where the case was assigned to United States District Judge Ed Kinkeade. Subsequently, on May 21, 2020, Le-Vel filed suit in this Court against R&D Global and Lurra Life, LLC,[1] another company owned by the Putnams, for trademark infringement and unfair competition stemming from R&D Global's efforts to compete with Le-Vel.

Before the Court is R&D Global's Motion to Dismiss or Transfer. (Dkt. #25). R&D Global contends that Le-Vel has engaged in improper claim splitting, and that under the first-to-file rule, Le-Vel's claims should be dismissed or, alternatively, transferred to the docket of Judge Kinkeade. Because the Court concludes that Le-Vel's claims are not subject to dismissal for improper claim splitting but that the

---

[1] This Memorandum Opinion and Order refers to R&D Global, LLC and Lurra Life, LLC collectively as "R&D Global."

first-to-file rule warrants transfer of Le-Vel's claims to the Northern District of Texas, R&D Global's motion is granted in part and this case is transferred to Judge Kinkeade of the Northern District of Texas.

## I. BACKGROUND

According to Le-Vel's allegations in this suit and in the Northern District of Texas, Le-Vel is a network-marketing company that markets and sells dietary supplements and other health- and wellness-related goods and programs. Le-Vel markets these various supplements and programs under the mark THRIVE and various "THRIVE-formative" marks, including THRIVE EXPERIENCE.

Le-Vel sells its products and programs directly to consumers through its website and through a network of "brand promoters." Le-Vel's brand promoters act as independent contractors, receiving commissions and bonuses for their own sales of Le-Vel's products as well as the sales of any additional brand promoters they recruit. In order to become a brand promoter, one must agree to the terms of Le-Vel's "promoter agreement," which includes terms prohibiting disclosure of Le-Vel's confidential information, competing with Le-Vel during the term of the agreement, and soliciting Le-Vel's brand promoters and customers for up to twelve months after termination of the agreement.

In 2016, Dan and Richard Putnam allegedly enrolled as brand promoters with Le-Vel, agreeing to the terms of Le-Vel's promoter agreement, which granted the Putnams "access to Le-Vel's proprietary software and back-office systems, branding strategies (including relating to the THRIVE marks), marketing campaigns and

2

strategies, customer support plans, and other confidential information." (Dkt. #1 ¶ 31). According to Le-Vel, with access to all this information, the Putnams set out "to copy Le-Vel's business model, compensation structure, and brand marketing." Amended Notice of Removal, Ex. A-10 Plaintiff's Amended Petition ¶ 25, *Le-Vel Brands, LLC v. Putnam*, No. 3:20-cv-975-K (N.D. Tex. Apr. 23, 2020), (Dkt. #4-11). To accomplish this, the Putnams allegedly used multiple LLCs, though primarily R&D Global, to establish their own network-marketing health and wellness company. R&D Global does business under multiple pseudonyms, including B-Epic and LurraLife, and, like Le-Vel, sells various health- and wellness-related products and programs. Le-Vel alleges that, in creating and managing R&D Global's business, the Putnams copied nearly every aspect of Le-Vel's business based on information the Putnams obtained as brand promoters for Le-Vel. Specifically, Le-Vel alleges that R&D Global copied Le-Vel's business model, marketing strategies, compensation structure, products, and trademarks and also that R&D Global solicited Le-Vel's customers and brand promoters.

In response, Le-Vel filed suit in Dallas County against the Putnams, R&D Global, and other individuals alleged to be involved in the scheme, asserting claims for breach of contract for the violation of the terms of Le-Vel's promoter agreement, misappropriation of trade secrets for the use of Le-Vel's confidential information, trademark infringement for R&D Global's infringement of Le-Vel's THRIVE EXPERIENCE mark under the trade name B-Epic, and tortious interference with existing contracts and prospective business relations for soliciting Le-Vel's brand

3

promoters and customers. Defendants then removed this suit to the Dallas Division of the Northern District of Texas, where it is currently pending.

Just over one month later, Le-Vel filed suit in this Court against R&D Global and Lurra Life, LLC, asserting claims for trademark infringement and unfair competition for infringement of Le-Vel's THRIVE mark under the trade name LurraLife.

## II. LEGAL STANDARD

R&D Global argues two grounds for dismissal or transfer. First, R&D Global argues that Le-Vel has engaged in improper claim splitting by asserting some of its causes of action in the Northern District of Texas and other causes of action in this Court. Second, Le-Vel argues that, under the first-to-file rule, Le-Vel is permitted to assert its claims only in the first-filed action—the action pending in the Northern District of Texas.

The rule against claim splitting and the first-to-file rule serve similar purposes and accordingly require similar analyses. *See Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08–CV–1168–D, 2009 WL 305874, at *4 n.4 (N.D. Tex. Feb. 9, 2009). Both rules serve purposes of comity and effective judicial administration by avoiding duplicative proceedings, respecting the authority of sister courts, and preventing the piecemeal adjudication of issues that warrant a uniform result. *Id.*

That said, the rules are not identical as each has a separate emphasis. *Id.* The rule against claim splitting requires a plaintiff to raise in one action all of its grounds for relief based on the same wrong, while the first-to-file rule stands for the

4

proposition that the court in which a matter was first filed should be the court to determine the proper course for all other disputes that substantially overlap with the first-filed suit. *See id.* Accordingly, the test for assessing allegations of improper claim splitting is whether the causes of action arise out of the same wrong or transaction, while the test under the first-to-file rule is whether the two cases substantially overlap. *Id.*

The available remedies under each rule are also distinct. Improper claim splitting generally results in dismissal while, when both cases are in federal court, application of the first-to-file rule generally requires transferring the case to the court in which the first-filed action is pending so that the first-filed court may determine the extent of the overlap between the cases and the proper course of action. *Id.*

### III. DISCUSSION

**A. Le-Vel's claims do not warrant dismissal for improper claim splitting.**

A plaintiff improperly splits its claims when it files multiple actions arising out of the same transaction or wrong. *Id.* at *4. This "transactional test" requires determining whether the actions arise out of the same nucleus of operative facts. *Hous. Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). In other words, the question is whether the claims share a common factual predicate—not whether the plaintiff relies on the same legal theories or seeks the same relief. *Id.*

Determining whether two actions arise out of the same transaction requires a case-by-case, pragmatic analysis of the factors in each action. *Id.* (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004)). Some factors that may be

5

relevant include "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (internal quotation marks omitted).

Le-Vel's claims do not warrant dismissal for improper claim splitting because they do not arise out of the same transaction or wrong as the claims pending in the Northern District of Texas. The transaction or wrong giving rise to Le-Vel's claims in this Court is R&D Global's alleged use of Le-Vel's THRIVE mark under the trade name LurraLife. The transactions or wrongs giving rise to Le-Vel's claims in the Northern District of Texas are the Putnams' alleged use of confidential information obtained through their association with Le-Vel to create a competing company and R&D Global's use of Le-Vel's mark THRIVE EXPERIENCE under the trade name B-Epic. To be sure, there is some similarity in the two actions—particularly in the two trademark claims. However, dismissal is not warranted simply because there is similarity between two claims—the claims must share a common factual predicate. Here, the two trademark claims involve different marks and different products produced under different trade names. Accordingly, the two trademark claims do not share the same factual predicate.

R&D Global argues that the two actions arise out of the same transaction because both actions arise out of Le-Vel's broader allegations of the Putnams' attempted duplication of Le-Vel's business. However, that the wrongdoing Le-Vel alleges in this suit arises out of the same alleged pattern of misconduct alleged in the

6

Northern District of Texas does not warrant dismissal. The question is not whether the claims share some factual background, but whether the claims share a common nucleus of operative facts. In this lawsuit, the operative facts are R&D Global's alleged use of the THRIVE mark without Le-Vel's consent. Le-Vel has asserted all its claims arising from these facts in this action. *See* (Dkt. #1) (asserting multiple claims for trademark infringement, false designation of origin, and unfair competition all arising from R&D Global's alleged use of the THRIVE mark). By contrast, none of the claims in the Northern District of Texas arises out of R&D Global's alleged use of the THRIVE mark. While the complaints in both lawsuits allege facts related to the Putnams' history with Le-Vel and their attempt to copy Le-Vel's business model, these facts are not necessary to prove the trademark-related claims Le-Vel urges in this Court. Le-Vel must prove only that it possesses a valid trademark in the THRIVE mark, that R&D Global uses the mark, and that R&D Global's use creates a likelihood of confusion as to source, affiliation, or sponsorship. *See Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (listing the elements of trademark infringement). These facts are not integral to any of Le-Vel's claims pending in the Northern District of Texas. While the claims in both courts may arise out of the same pattern of alleged wrongdoing, they do not arise out of the same wrong.

Although R&D Global identifies similarities between the two lawsuits, courts have declined to dismiss suits with even greater similarity to other pending lawsuits. In *Verde v. Stoneridge, Inc.*, after an accident resulted from a malfunction in the plaintiff's truck, the plaintiff filed one action for personal injuries resulting from the

7

accident and a separate action for breach of warranty related to the malfunctioning of the truck. 137 F.Supp.3d 963 (E.D. Tex. 2015). The court concluded that dismissal was not warranted because, "although [the] claims can generally be described as arising out of the truck accident, . . . [a]t least some of the facts and legal sources related to Defendants' alleged warranty and indemnification obligations differ from those regarding Defendants' responsibility for the truck accident and its effects." *Id.* at 974.

In *Hlavaty v. Integrated Prod. Servs., Inc.*, after joining a prior action against their employer for failure to pay overtime wages for hours worked in excess of forty hours in one week, the plaintiffs filed a separate action contending that the same employer failed to pay them for work performed "off the clock" and failed to accurately calculate the wages that should be paid for overtime hours. No. 5:16-CV-949-DAE, 2017 WL 10699610, at *3 (W.D. Tex. Jan. 27, 2017). The court concluded that, although the two actions could "generally be described as arising out of the same facts," factual similarity at a general level was insufficient to warrant dismissal for improper claim splitting. *Id.*

Similarly, when Le-Vel's claims are viewed with some degree of generality, Le-Vel's lawsuits can be said to broadly arise out of the same facts—the Putnams' efforts to copy Le-Vel's business. However, similarity between two suits at such a general level does not warrant dismissal for improper claim splitting. The specific, operative facts underlying the claims in each lawsuit remain distinct. Accordingly, this action should not be dismissed for improper claim splitting.

8

**B. Application of the first-to-file rule warrants transfer of the case to the Northern District of Texas.**

In contrast to the rule against claim splitting, transferring a case under the first-to-file rule does not require the factual overlap between the two cases to rise to the same degree of specificity. *See, e.g., Hlavaty*, 2017 WL 10699610, at *3–4 (concluding that, though dismissal was not warranted under the rule against claim splitting, there was sufficient overlap between the cases to warrant transfer under the first-to-file rule). Rather, "[t]he first-to-file rule applies when the two actions involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical." *AmberWave Sys. Corp. v. Intel Corp.*, No. 2:05-CV-321, 2005 WL 2861476, at *1 (E.D. Tex. Nov. 1, 2005). When considering the factual overlap of the cases, the second-filed court must only determine whether there is a likelihood of substantial overlap between the two cases. *Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 606 (5th Cir. 1999) (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). If the court concludes that there is a likelihood of substantial overlap, the court should transfer the case so that the first-filed court can determine how the two cases should proceed. *Id.*

Factors that courts consider in determining whether there is substantial overlap between cases include whether the core issues in the cases are the same, whether much of the evidence produced will be the same, the extent of the overlap, the likelihood of conflict between different judgments, and the advantage and interest

in each forum's resolving the case. *Int'l Fid. Ins. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011).

Having considered the two actions, the Court concludes that there is a likelihood of substantial overlap, and that this case should therefore be transferred to the Northern District of Texas for Judge Kinkeade to determine how the two cases should proceed. The parties in the two cases are effectively the same. *See AmberWave*, 2005 WL 2861476, at *2 (concluding that there was a likelihood of substantial overlap between the two cases in part because the parties were the same). Le-Vel Brands, LLC is the sole plaintiff in both actions, and R&D Global, LLC is a defendant in both actions. While Defendant Lurra Life, LLC is not a defendant in the action in the Northern District of Texas, Le-Vel alleges that Lurra Life, LLC is owned by Dan Putnam, who is a defendant in the Northern District action. Le-Vel also alleges that R&D Global, LLC and Lurra Life, LLC essentially operate as one to promote and sell the allegedly infringing products. The fact that the two cases effectively involve the same parties increases the likelihood of substantial overlap.

Additionally, although the trademark-infringement claims asserted in both actions are not identical, they do involve closely related subject matter and raise potentially similar questions. In this Court, Le-Vel challenges R&D Global's alleged infringement of the mark THRIVE. In the Northern District of Texas, Le-Vel challenges R&D Global's alleged infringement of the mark THRIVE EXPERIENCE. The relatedness of the subject matter is readily apparent from the similarity of the marks. Le-Vel's complaint only underscores the relatedness of the marks by referring

10

at times to the mark THRIVE EXPERIENCE as one of its "THRIVE formative marks." (Dkt. #1 ¶ 1). In other words, the trademark-infringement action in the Northern District of Texas involves effectively the same defendants and a mark that Le-Vel considers "formative" of the mark at issue in this Court.

The similarity of the marks carries significant implications for the potential overlap of the two cases. *See AmberWave*, 2005 WL 2861476, at *1 (applying the first-to-file rule when the two cases involved different, yet related, patents). In both cases, Le-Vel will have to produce evidence proving that it possesses a valid trademark in the marks. Much of the evidence to show that Le-Vel possesses a valid trademark in the mark THRIVE is likely to be substantially similar, if not identical, to the evidence used to prove Le-Vel's possession of a trademark in the "THRIVE formative" mark, THRIVE EXPERIENCE. Any issues regarding the validity of the trademarks are also likely to overlap. And because the marks at issue in both cases are similar and the allegedly infringing products all involve the same market—the market for health and wellness products—there is also potential for overlap in the evidence used to prove customer confusion.

Additionally, although Le-Vel's specific causes of action in the two cases challenge discrete legal wrongs, Le-Vel's ultimate and broader aim in both cases appears to be to challenge the Putnams' alleged attempt to duplicate Le-Vel's business. A cursory review of the allegations in both complaints reveals the overlap and the relatedness of the two cases. Both complaints provide detailed allegations of the Putnams' history as Le-Vel brand promoters, their bad-faith use of their promoter

11

accounts to access Le-Vel's products and proprietary information, and their attempt to duplicate aspects of Le-Vel's business. *Compare* (Dkt. #1 ¶¶ 30–40) *with* Amended Notice of Removal, Ex. A-10 Plaintiff's Amended Petition ¶¶ 16–19, 23–29, *Le-Vel Brands, LLC v. Putnam*, No. 3:20-cv-975-K (N.D. Tex. Apr. 23, 2020), (Dkt. #4-11). Le-Vel's inclusion of these allegations in both complaints shows that Le-Vel considers the allegations important to both cases. And although these allegations are not the specific, operative facts necessary to prove Le-Vel's trademark-related claims before this Court, Le-Vel plans to prove these allegations to establish that Defendants acted willfully in order to recover exemplary or punitive damages. (Dkt. #1 at 29). Accordingly, it is likely that there will be significant overlap between the evidence presented in this case and the case pending in the Northern District of Texas.

Because the two cases involve effectively the same parties, involve two substantially related trademarks, arise out of the same alleged scheme to duplicate Le-Vel's business, include similar factual allegations, and will likely involve overlapping evidence, the Court concludes that there is sufficient likelihood that the two cases substantially overlap. Accordingly, this case should be transferred to the Northern District of Texas, the court in which the first-filed action is pending.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss or Transfer, (Dkt. #25), is **DENIED in part** and **GRANTED in part**. Insofar as Defendants' motion requests that this case be dismissed, the motion is **DENIED**. Insofar as

12

Defendants' motion requests that this case be transferred to the Northern District of Texas, the motion is **GRANTED**.

It is further **ORDERED** that this case is hereby **TRANSFERRED** to the docket of Judge Ed Kinkeade in the Dallas Division of the Northern District of Texas, effective immediately.

**So ORDERED and SIGNED this 15th day of March, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE